# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL R. SCHWARTZ,                                    Case No. 1:23-cv-374
      Plaintiff,                                      Litkovitz, M.J.

      v.

THE HALL INSURANCE GROUP, INC.,                        **ORDER**
      Defendant.

Plaintiff Michael Schwartz brings this pro se action against defendant The Hall Insurance Group, Inc. (thereafter referred to as HIG) alleging causes of action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and state law. (Doc. 1). This matter is before the Court on defendant's motion for summary judgment (Doc. 43), and plaintiff's memorandum in opposition (Doc. 49).

## I. Plaintiff's complaint

Plaintiff's complaint alleges that defendant is an insurance company that markets and sells Medicare supplement plans, Medicare Advantage plans, and other insurance products throughout the United States. Plaintiff alleges that between June 16 and December 31, 2022, plaintiff received two unsolicited "telemarketing calls" and one "text message" from defendant "all through the use of an automated system for the selection or dialing of telephone numbers" despite plaintiff's cellular number being listed on the National Do Not Call Registry. (Doc. 1 at PAGEID 13). Plaintiff alleges that on June 16, 2022, he answered a phone call from defendant and after hearing a "prerecorded message, Plaintiff was transferred to and spoke with Defendant's employee, Rose Greene" who said, "Hi, this is Rose reaching out to you." (*Id.*). Plaintiff alleges he "never provided the Defendant with any form of consent, including express written consent that authorized Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone

numbers." (*Id*. at PAGEID 14). Plaintiff alleges he "is not and has never been eligible for Medicare" and "never asked to be contacted about Medicare and has never requested contact from The Hall Insurance Group." (*Id*.).

Plaintiff's complaint outlines seven claims against defendant relating to three telecommunications contacts: Count I for violation of 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA, Count II for "knowing and/or willful" violations of the TCPA under 47 U.S.C. § 227(b)(3)(B)[1], Count III for violation of Ohio Rev. Code § 4719.02(A) – failure to register as a telephone solicitor, Count IV for violation of Ohio Rev. Code § 4719.02(D) – failure to maintain an Ohio resident statutory agent, Count V for violation of Ohio Rev. Code § 4719.06(A) – failure to disclose required information, Count VI for violation of Ohio Rev. Code § 1345.02(A) – engaging in unfair or deceptive acts or practices (deceptive statement), and Count VII for violation of Ohio Rev. Code § 1345.02(B)(9) – deceptive claim of "sponsorship, approval, or affiliation."

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the

---

[1] This is a damages provision related to the first count. Plaintiff references the discretion granted to the court to grant treble damages under the TCPA's private right of action, which states, "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C.A. § 227(b)(3)(B).

materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.,* 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* 706 F. App'x 295 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment." *Wolfe v. Village of Brice, Ohio*, 37 F. Supp. 2d 1021,

1026 (S.D. Ohio 1999) (citing *Anderson*, 477 U.S. at 251 and *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 288 (1968).

### III. Evidence presented

Defendant presents the affidavit of Melissa Hall, statutory agent for defendant, to its motion for summary judgment (Doc. 43-1, Melissa Hall Aff., at PAGEID 213-16), as well as plaintiff's responses to defendant's discovery requests. (Doc. 49-1, Ex. 3). Plaintiff does not include an affidavit with his memorandum in opposition to summary judgment but does include copies of defendant's responses to plaintiff's discovery requests. (Doc. 49-1, Ex. H). Plaintiff also attached additional exhibits that do not relate directly to the facts at issue in defendant's summary judgment motion. (Doc. 49-1, Exs. I, J, K, L).

*Affidavit of Melissa Hall*

Ms. Hall avers HIG "sells a variety of insurance products, including primarily Medicare health insurance supplements, and is licensed to do business in Texas and other [s]tates" but "excluding Ohio." (Doc. 43-1, Melissa Hall Aff., at PAGEID 213: ¶¶ 2-3). On or about March 31, 2022, defendant "purchased 3,583 leads from LRG Media Group, Inc. doing business as The Leads Warehouse" containing "contact information for potential customers who expressly requested information concerning Medicare insurance supplements," and those leads were only supposed to contain contact information for individuals residing in states where HIG was licensed to sell insurance. (Doc. 43-1, Melissa Hall Aff., at PAGEID 214: ¶ 3). The Leads Warehouse represented to HIG that the leads were generated by requests for information "about

4

Medicare supplements entered on a partner website at www.securemedicareenrollment.com"[2]

(Doc. 43-1 at PAGEID 213-14: ¶ 4), where the following disclaimer was posted above the button

for submission:

> This is a solicitation for insurance.  By clicking the "Submit" button below you acknowledge and agree to our Privacy Policy and Terms of Service, and are providing your express written consent by electronic signature to be contacted by Secure Medicare Enrollment and our Marketing Partners via: automated telephone dialing systems, artificial or prerecorded voices, by email, SMS text message or live agent to the phone number provided, even if my telephone number is a mobile number that is currently listed on any state, federal or corporate '"Do Not Call" list, regarding telemarketing promotions for products or services (including Medicare advantage plans, Medicare Part D prescription drug plans, Medicare supplement insurance plans and/or products that may or may not be covered by your Medicare insurance but may be of interest to you).  Your phone carrier's message and data rates may apply.  Participating sales agencies represent Medicare Advantage [HMO, PPO and PFFS] organizations and stand-alone PDP prescription dmg plans that are contracted with Medicare.  Enrollment depends on the plan's contract renewal.  We do not offer every plan available in your area.  Currently we represent multiple organizations which offer a range of products in your area.  Please contact http://Medicare.gov, 1-800-MEDICARE, or your local State Health Insurance Program (SHIP) to get information on all of your options.  Enrollment in the described plan type may be limited to certain times of the year unless you qualify for a Special Enrollment Period.  I understand I can revoke this consent at any time and consent is not required as a condition of purchase.

(Doc. 43-1, Melissa Hall Aff., at PAGEID 214: ¶ 5).  According to Ms. Hall, one of the contact

leads supplied by The Leads Warehouse contained the phone number (817-600-6805) for an

individual from Texas named Michael Schwartz and a birth date indicating the individual was

seventy-five years old.  (Doc. 43-1, Melissa Hall Aff., at PAGEID 214: ¶ 6).  The lead indicated

that Schwartz's information was entered into the request form on

www.securemedicareenrollment.com on March 7, 2022.  (Doc. 43-1, Melissa Hall Aff., at

PAGEID 214: ¶ 6).

  Ms. Hall states that HIG "employs a Radius Agency Management System" which

---

[2] Website www.securemedicareenrollment.com was not operational at the time this order was issued.

"possesses only the capacity to dial telephone numbers that have been entered manually" and "lacks the capacity to use a random or sequential number generator." (Doc. 43-1, Melissa Hall Aff., at PAGEID 215: ¶ 7). Ms. Hall definitively claims that HIG "never initiates telecommunications with potential customers by dialing random telephone numbers or sequential telephone numbers, but instead initiates telecommunications only with those potential customers it believes have expressly requested telecommunication." (Doc. 43-1, Melissa Hall Aff., at PAGEID 215: ¶ 8). Hall then states, "I manually entered [p]laintiff's telephone number into the system, and the system dialed [p]laintiff's telephone number on or about June 16, 2022, and again on or about June 20, 2022. The system did not dial [p]laintiff's telephone number randomly or with a sequential number generator." (Doc. 43-1, Melissa Hall Aff., at PAGEID 215: ¶ 9). Ms. Hall continued by stating that once a placed call is answered, the "potential customer is greeted with a pre-recorded voice (my voice, not an artificial voice) until an agent is available" (Doc. 43-1, Melissa Hall Aff., at PAGEID 215: ¶ 10), and to the best her knowledge, "plaintiff answered both calls." (Doc. 43-1, Melissa Hall Aff., at PAGEID 215: ¶ 9). If an agent is not available, then the person receiving the call is automatically transferred to HIG's voicemail without speaking to a live person. (Doc. 43-1, Melissa Hall Aff., at PAGEID 215: ¶ 10).

According to Ms. Hall, the first call placed to plaintiff was connected to defendant's voicemail because HIG "did not have an available agent" but "Rose Greene, an agent for [HIG], engaged with [p]laintiff personally on the second of the two calls." (Doc. 43-1, Melissa Hall Aff., at PAGEID 215: ¶ 11). Ms. Hall claims that Ms. Greene had previously been advised that plaintiff had "expressly requested the call" (Doc. 43-1, Melissa Hall Aff., at PAGEID 215-16: ¶ 12), and plaintiff initially "represented to Ms. Greene that he was a Medicare recipient." (Doc. 43-1, Melissa Hall Aff., at PAGEID 216: ¶ 13). Ms. Hall claims plaintiff "never inquired of Ms.

6

Greene how she acquired his number" nor did he inform her that "he had placed his number on the National Do-Not-Call Registry." (Doc. 43-1, Melissa Hall Aff., at PAGEID 216: ¶ 14). Ms. Hall states that Ms. Greene did not make any "offer or inducement to [p]laintiff, and never discussed with [p]laintiff the price, quality, or availability of goods or services," nor did plaintiff "purchase any goods or services" from defendant. (Doc. 43-1, Melissa Hall Aff., at PAGEID 216: ¶ 16-17).[3] Ms. Hall claims, "Ms. Greene specifically informed [p]laintiff she was not making a sales call, but instead she was checking to see if all of the [p]laintiff's Medicare needs had been met." (Doc. 43-1, Melissa Hall Aff., at PAGEID 216: ¶ 17).

*Defendant's Discovery Responses*

Defendant states it "purchased a lead, generated from a specific request for additional information about Medicare supplements, entered on the website www.securemedicareenrollment.com on or about March 7, 2022, from an individual or entity that identified himself as Michael Schwartz, residing in Texas, born April 5, 1946, at telephone number (817) 600-6805, IP address 108.209.28.77." (Doc. 49-1 at PAGEID 343, Ex. H, Interrogatory 15 Response). In response to plaintiff's request for admission no. 7, defendant "admits in part and denies in part that it did not have [p]laintiff's permission or consent to place telephone communications to [p]laintiff's telephone number" but instead "possessed a good faith belief that [p]laintiff provided his consent at https://securemedicareenrollment.com." (Doc. 49-1 at PAGEID 345, Ex. H, Request for Admission 7 Response). Defendant further states that it "does not possess evidence that [p]laintiff is, in fact, the individual who provided [p]laintiff's contact information at https://securemedicareenrollment.com." (Doc. 49-1 at PAGEID 345, Ex. H, Request for Admission 7 Response).

---

[3] Defendant appears to be quoting the language of Ohio Rev. Code § 4719.01(7)(b).

*Plaintiff's Discovery Responses*

In defendant's requests to admit propounded to plaintiff, plaintiff was asked to admit that he did not possess evidence contradicting defendant's claim that the contact information defendant purchased from The Leads Warehouse "resulted from a contact request" submitted at www.securemedicareenrollment.com "from an individual identified as Michael Schwartz." (Doc. 43-2 at PAGEID 227, Ex. 3, Request for Admission 1). Plaintiff responded by objecting and denying based upon defendant's failure to produce evidence supporting its claim, stating, "the lack of evidence produced by [d]efendant [in response to plaintiff's discovery requests] is evidence that [d]efendant does not have records of obtaining consent required by U.S. law." (Doc. 43-2 at PAGEID 227, Ex. 3, Request for Admission 1 Response). Plaintiff was also asked to admit that if he, or another individual or entity claiming to be plaintiff, "requested a telephone call concerning supplemental Medicare coverage at www.securemedicareenrollment.com, then [d]efendant's telecommunications directed to [plaintiff's phone number] did not constitute a 'telephone solicitation' as defined in the [TCPA]." (Doc. 43-2 at PAGEID 227-28, Ex. 3, Request for Admission 2). Plaintiff objected to the hypothetical form of defendant's question and responded, in part, that he "did not request to be contacted by entering his information into the website [blank space] nor did [p]laintiff authorize another individual to enter his information." (Doc. 43-2 at PAGEID 228, Ex. 3, Request for Admission 2 Response).

**IV. Defendant's motion for summary judgment is granted in part and denied in part.**

**A. <u>The Telephone Consumer Protection Act</u>**

Establishing a claim under the TCPA for calls made to a cellular phone requires the plaintiff to show that: (1) the defendant made a call to a cellular phone, (2) using an automatic telephone dialing system (ATDS) or an artificial or prerecorded voice, and (3) without prior

8

express consent of the called party. *Zehala v. Am. Exp.,* No. 2:10-cv-848, 2011 WL 4484297, at *5 (S.D. Ohio Sept. 26, 2011) (citing 47 U.S.C. § 227(b)(1)(A)). *See also* 47 C.F.R. § 64.1200(a)(2) (requiring *written* consent if the call "introduces an advertisement or constitutes telemarketing"). Here, it is undisputed that defendant placed at least two calls to plaintiff's cellular phone, one on June 16, 2022, and another on June 20, 2024, and one text message to plaintiff's cellular phone on June 16, 2022. (Doc. 43-1, Melissa Hall Aff., at PAGEID 215: ¶ 9; Doc. 49 at PAGEID 318-19, 325, 329). However, the parties disagree over whether defendant used an ATDS or prerecorded voice, and whether plaintiff consented to the contacts.

### i. *Use of automatic telephone dialing system*

Plaintiff asserts HIG violated 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA, which prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii). HIG responds that the Radius Agency Management System it employs possesses only the capacity to dial telephone numbers that have been entered manually and lacks the capacity to use a random or sequential number generator. (Doc. 43-1, Melissa Hall Aff., at PAGEID 214: ¶ 7).

Under the TCPA, "an 'automatic telephone dialing system' is a piece of equipment with the capacity both 'to store or produce telephone numbers to be called, using a random or sequential number generator,' and to dial those numbers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 398-99 (2021) (quoting 47 U.S.C. § 227(a)(1)). "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential

number generator." *Id*. at 399. *See LaGuardia v. Designer Brands Inc.*, No. 2:20-cv-2311, 2021 WL 4125471, at *8 (S.D. Ohio Sept. 9, 2021) (quoting *Tehrani v. Joie de Vivre Hosp., LLC*, No. 19-cv-08168, 2021 WL 3886043, at *4 (N.D. Cal. Aug. 31, 2021) (collecting cases from other circuits declining to apply *Duguid* to systems that randomly select numbers to call from a predetermined list of telephone numbers, when the telephone numbers were not originally generated or produced by the system itself).

Plaintiff has failed to present evidence creating a genuine issue of fact as to whether HIG uses an automatic telephone dialing system. Plaintiff appears to place the blame on HIG for not producing evidence in response to his request for production of documents. He states, "Defendant did not produce information about the communication system Defendant used to contact people on the dates Defendant contacted Plaintiff." (Doc. 49 at PAGEID 324, citing Doc. 49-1 at PAGEID 348, Ex. H, Request for Production 13). Request for Production 13 states:

> Provide information about the technology or service used to send a text message to Plaintiff's phone number including the brand name of the technology, a description of the technology's use, the date Defendant began and ended use of the text messaging technology or service, the registered business name of the company that Defendant employed to use the text messaging technology on its behalf, or the name of the company that Defendant obtained the text messaging technology from.

Defendant objected to the request, asserting that "[t]his request is not a request for production of documents, but rather an interrogatory." (Doc. 49-1 at PAGEID 348). Plaintiff fails to present any evidence or argument that he requested this information through an interrogatory after defendant's objection, and this issue was not the subject of a discovery dispute. Therefore, plaintiff cannot rely on defendant's failure to produce evidence about the Radius Agency Management System used by HIG to contact him. Plaintiff also alleges in his memorandum in opposition that he viewed a video on the Radius Agency Management System product page and drew certain conclusions about the product. (Doc. 49 at PAGEID 324, citing

10

https://help.radiusbob.com/en/articles/2988701-watch-an-overview-of-radius-features). This website information has not been authenticated under Fed. R. Evid. 901. *See Fish v. Stone, Higgs & Drexler, P.C.*, No. 2:17-cv-2093, 2017 WL 6757575, at *6 (W.D. Tenn. Dec. 29, 2017) (website information that is not authenticated cannot be considered on a motion for summary judgment) (and cases cited therein). *See also Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 582 (5th Cir. 2022) (authentication of website or electronic source may be made through "testimony by a witness with direct knowledge of the source"). Even if the website information had been authenticated, it is inadmissible hearsay evidence. Plaintiff's purported video evidence is being offered for the truth of what is stated in the video, i.e., the functionality of the Radius Management System, and is therefore hearsay. Plaintiff has not established an exception to the hearsay rule to permit the Court's consideration of this evidence. Therefore, it cannot be considered by the Court on summary judgment.

The burden is on plaintiff to present evidence creating a genuine issue of fact on whether the Radius Agency Management System constitutes an automatic telephone dialing system. Plaintiff has failed to present competent evidence on this issue. Therefore, defendant's motion for summary judgment on plaintiff's TCPA claim relating to the use of an automatic telephone dialing system is granted.

### ii. Use of prerecorded voice

The parties are generally in agreement that defendant used a prerecorded voice to deliver a communication at the start of each cellular call stating, "Hello there, friend. You have reached the office of Medicare Mel. Thank you so much for calling. Please hold the line, and someone from The Hall Insurance Group will be with you in one moment." (Doc. 43 at PAGEID 206; Doc. 49 at PAGEID 325). Defendant admits to using a prerecording of Ms. Hall's voice for the

greeting before joining the call with a live agent but argues the use of a prerecorded greeting does not violate § 227(b)(1)(A) because a prerecorded greeting "which is merely a prelude to a live conversation and lacks any other substantive purpose, does not constitute a telephone 'call.'" (Doc. 43 at PAGEID 207). Defendant argues the "greeting" is not a "call" under the TCPA because it does not attempt to deliver a message or sell products or services. (*Id*. at PAGEID 205-06). Plaintiff disagrees, arguing that the "purpose of the prerecorded message was to indicate that [d]efendant could provide a service to called parties" and alleging that defendant omitted from its motion the final statement of the prerecording: "and remember I can't help you if you don't call." (Doc. 49 at PAGEID 325).

Defendant has provided no caselaw supporting its position that a prerecorded "greeting" is not a "call" that violates the TCPA. Defendant appears to suggest that because a "greeting" is merely a prelude to a live conversation and simply informs the recipient of the caller's identity without conveying a substantive message, it does not offend the TCPA. (Doc. 43 at PAGEID 206-07).

Defendant's interpretation fails under the plain language of the TCPA. The statute prohibits making "*any call* . . . using . . . an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A) (emphasis added). The plain language of the statute makes no distinction based on the message delivered. Defendant does not dispute that it made calls to plaintiff and that the calls used a prerecorded voice (that of Ms. Hall's). In addition, the Court's own research leads to the conclusion that defendant's prerecorded greeting falls within the TCPA prohibitions. In *Thronson v. Huntington Nat'l Bank*, No. 2:19-cv-1789, 2020 WL 3448281 (S.D. Ohio June 24, 2020), the plaintiff alleged the defendant creditor violated section 227(b)(1)(A) of the TCPA when it left two prerecorded voice messages on his cell phone. At issue was whether the

plaintiff had suffered a concrete injury for Article III standing. The Court held the plaintiff raised a genuine issue of fact on TCPA standing when he testified that the prerecorded voicemails to his phone were "annoying," "very irritating," and a "nuisance," substantiating the injury requirement. In making its finding, the Court examined the legislative history of the TCPA and concluded that "when enacting the TCPA, Congress determined that all prerecorded calls, *regardless of their source or subject matter*, were a nuisance and an invasion of privacy." 2020 WL 3448281, at *6 (emphasis added). "Congress determined that 'automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons." 2020 WL 3448281, at *8 n.4 (quoting S. Rep. No. 102-178, at 4–5 (1972) (noting that "automated calls cannot interact with the customer except in preprogrammed ways" and that, among other concerns, prerecorded or automated calls "do not allow the caller to feel the frustration of the called party")). A prerecorded "greeting" is no different than other types of prerecorded messages in that it still prevents recipient from interrupting the call or speaking with a live person while it is playing. Defendant's attempt to distinguish between a pre-recorded call containing only a greeting and a prerecorded call delivering a particular message or sales pitch is a distinction without a difference.

Defendant also cites to language from Federal Communications Commission rulings to supports its argument that the content of the message relayed by the prerecorded call should be considered when determining a TCPA violation:

> [T]he FCC has opined []the TCPA prohibits initiating "any telephone call to any residential telephone line using an artificial or prerecorded voice **to deliver a message** without the prior express consent of the called party." In re Implications of Artificial Intelligence Technologies on Protecting Consumers from Unwanted Robocalls and Robotexts, CG Docket No. 24-17, par. 3. (Emphasis added). Further, such prohibition involves "[generating] **call content** using a prerecorded voice, *Id*.

13

at par. 5 (Emphasis added), and the FCC has specifically referred to "prerecorded *message calls*." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1318, citing In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 559, 564 (F.C.C. 2008). (Emphasis added).

(Doc. 43 at PAGEID 206). The language quoted by defendant – to deliver a message without prior consent – is taken from 47 U.S.C. § 227(b)(1)(B), which regulates calls to *residential* telephone lines. *See In the Matter of Implications of A.I. Techs. on Protecting Consumers from Unwanted Robocalls & Robotexts*, No. CG23-362, 2024 WL 519167, at *1 (OHMSV Feb. 8, 2024) ("In relevant part, the TCPA prohibits initiating 'any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party' unless a statutory exception applies or the call is 'exempted by rule or order by the Commission under [section 227(b)(2)(B)].'[6]", with footnote six citing to 47 U.S.C. § 227(b)(1)(B)). Plaintiff's statutory claim is brought under 47 U.S.C. § 227(b)(1)(A), which omits the "to deliver a message" language and applies to calls made to cellular phone calls. "[I]t is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983) (additional internal quotation marks omitted)). *See also In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, ¶ 43 (F.C.C. Jul. 10, 2015) ("The TCPA requires prior express consent for robocalls to wireless numbers without regard to the content of the call."). When enacting the TCPA, Congress granted discretion to the FCC to exempt certain types of prerecorded calls to residential lines based on their content but chose not to provide the same discretion to the F.C.C. for cellular

calls. 47 U.S.C. § 227(a)(2)(B). *See Throndson*, 2020 WL 3448281, at *6 (citing *Tele. Consumer Prot. Act Of 1991*, Pub. L. No. 102–243, § 2, 105 Stat 2394 (1991)). The FCC has clearly stated in rulings related to debt collection that the "plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party . . . [and] that this prohibition applies regardless of the content of the call, and is not limited only to calls that constitute telephone solicitations." *In the Matter of R. and Reguls. Implementing the Tel. Consumer Protec. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (F.C.C. 2008) (internal quotation marks omitted).

Defendant admits to using the prerecorded voice of Ms. Hall when it initiated telephone calls to plaintiff's cellular telephone line and has failed to demonstrate its assertion that a prerecorded "greeting" is an exception under 47 U.S.C. § 227(b)(1)(A). Therefore, defendant's summary judgment motion on plaintiff's TCPA claim relating to the use of a prerecorded voice call is denied.

### iii. Consent

A caller must obtain prior express consent before making a call to a cellular telephone number using either an automatic dialing system or an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii). When the call constitutes a telemarketing call, then the caller's signed written consent is required. 47 C.F.R. § 64.1200(a)(2). Any consent relied upon under this section must be sufficient to demonstrate that the call recipient received a "clear and conspicuous disclosure" the purpose of which is to "authorize the seller to place prerecorded calls to such person," 16 C.F.R. § 310.4(b)(v)(A)(i), and "unambiguously" agrees to receive calls at the designated telephone number. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act*

*of 1991*, 27 F.C.C. Rcd. 1830, ¶ 32 (F.C.C. Feb. 15, 2012) (citing 16 C.F.R. § 310.4(b)(v)(A)(i-iv)).[4] Further, if existence of consent is challenged at a later date, then the burden is on the caller to prove a "clear and conspicuous disclosure" was provided and that unambiguous consent was obtained. 16 C.F.R. § 310.4(b)(v)(A)(i).

Here, defendant bears the burden of establishing that there was prior express consent. *See Zehala,* 2011 WL 4484297, at *5 (citing *Pollock v. Bay Area Credit Serv., LLC*, No. 08–61101–Civ., 2009 WL 2475167, at *9–10 (S.D. Fla. Aug.13, 2009)). Defendant claims via Ms. Hall's affidavit that it received plaintiff's written consent and contact information from a third-party partner, The Leads Warehouse, who obtained the information through an individual request for contact submitted on the partner's website ([www.securemedicareenrollment.com](www.securemedicareenrollment.com)). (Doc. 43-1 at PAGEID 213-14: ¶ 4). Ms. Hall avers that an individual named Michael Schwartz, a resident of Texas with phone number 817-600-6805, consented to be called when he selected the option to request direct contact from an agent or broker, which included the disclaimer, "By clicking the 'Submit' button below you acknowledge and agree to our Privacy Policy and Terms of Service, and are providing your express written consent by electronic signature to be contacted by Secure Medicare Enrollment and our Marketing Partners via: automated telephone dialing systems, artificial or prerecorded voices, by email, SMS text message or live agent to the phone number provided, even if my telephone number is a mobile number that is currently listed on any state, federal or corporate 'Do Not Call' list, regarding telemarketing promotions for products or services. . . ." (Doc. 43-1, Melissa Hall Aff., at PAGEID 214: ¶ 5).

In contrast, plaintiff denies that he consented to defendant's telephone sales calls to his

---

[4] Compare 16 C.F.R. § 310.4(b)(1)(v)(A) (prohibiting telemarketers from "initiating any outbound telephone call that delivers a prerecorded message" without obtaining consent from the recipient) and 16 C.F.R. § 310.5(a)(8) (requiring telemarketers to keep verifiable records of consent for outbound calls as described in 16 C.F.R. § 310.4(b)(1)(v)(A)).

cell phone. He avers, "Plaintiff did not request to be contacted by entering his information into the website nor did [p]laintiff authorize another individual or entity to enter his information. If [p]laintiff's information was entered into a website as a means of requesting contact about Medicare, then [p]laintiff is the victim of identity fraud. . . ." (Doc. 43-2 at PAGEID 228, Ex. 3, Request for Admission 2 Response).[5]

Viewing the evidence in the light most favorable to plaintiff, the court finds there is a genuine factual dispute as to whether plaintiff gave his consent to be contacted by defendant.

Defendant relies on a "good faith" argument, arguing that defendant's reliance on the information obtained from The Leads Warehouse – that plaintiff had provided express written consent to be contacted – was reasonable and justified. (Doc. 43 at PAGEID 207-08; Doc. 49-1 at PAGEID 345, Ex. H, Request for Admission 7 Response). However, defendant's intent is irrelevant because "[t]he TCPA is essentially a strict liability statute" that does not require any intent for liability. *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012) (quoting *Alea London Ltd. v. American Home Services, Inc*., 638 F.3d 768, 776 (11th Cir. 2011)). *See also Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc*., 757 F.3d 540, 543 (6th Cir. 2014); *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-cv-638, 2014 WL

---

[5] Plaintiff states that even assuming he had provided his consent, HIG nevertheless "did not have plaintiff's [consent] because [defendant was] not listed" on the partner website as a potential marketing partner." (Doc. 49 at PAGEID 322). Plaintiff contends the "Marketing Partners" link in the disclaimer language contains a hyperlink that takes users of the website to the Marketing Partners' webpage, and neither HIG nor other commercial entities owned, operated, or controlled by Ms. Hall are listed as Marketing Partners. (Doc. 49 at PAGEID 321-22, citing Doc. 25, Ex. E). The photocopy of the purported website cited by plaintiff has not been authenticated under Fed. R. Evid. 901; it appears to have been taken on November 5, 2023, which is not relevant to the state of the website in June 2022 when plaintiff states he received phone calls from HIG; and it constitutes inadmissible hearsay evidence. Therefore, the Court cannot consider this evidence on summary judgment. *See United States v. Standring*, Case No. 1:04-cv-730, 2005 WL 3981672, at *4-6, (S.D. Ohio Oct. 19, 2005) (citing *Perfect 10, Inc. v. Cybernet Ventures, Inc*., 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002)), *adopted*, 2020 WL 689116 (S.D. Ohio Mar. 15, 2006) (Dlott, J) (finding that both "indicia of authenticity" and a valid declaration meet the authenticity requirements of Fed. R. Evid. 901); *see also ForeWord Magazine, Inc. v. OverDrive, Inc*., Case No. 1:10-cv-1144, 2011 U.S. Dist. LEXIS 125373, at *9 (W.D. Mich. Oct. 31, 2011) (noting exhibits reflecting information from commercial websites must be authenticated by one of the methods allowed by Fed. R. Evid. 901, including testimony from a witness with personal knowledge, expert testimony, or reference to distinctive characteristics).

497031, at *9 (S.D. Ohio Feb. 7, 2014). While defendant is correct that "consent may be obtained by and conveyed through an intermediary," *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 343 (6th Cir. 2016), the FCC has stated that "a caller remains liable for TCPA violations when it relies upon the assertion of an intermediary that the consumer has given such prior express consent." *Matter of Groupme, Inc./Skype Commun. S.A.R.l Pet. for Expedited Declaratory Rul. R. and Reguls. Implementing the Tel. Consumer Protec. Act of 1991*, 29 F.C.C. Rcd. 3442, 3447 (F.C.C. 2014).

Defendant has failed to meet its burden of introducing evidence demonstrating the absence of a genuine issue of material fact related to consent. *Celotex Corp.*, 477 U.S. at 322. Therefore, defendant's summary judgment motion is denied as to the issue of whether plaintiff gave prior express consent to be contacted.

### iv. Willfully or Knowingly

Defendant also moves for summary judgment on the question of whether defendant willfully or knowingly violated the TCPA pursuant to 47 U.S.C. § 227(b)(3)(c) and is therefore subject to trebled damages. (Doc. 43 at PAGEID 209). A finding of willful conduct would, at minimum, require a showing that the plaintiff did not consent to the communication and that defendant was aware there was a lack of consent. Given the contested issue of plaintiff's consent, defendant is not entitled to summary judgment on whether defendant willfully or knowingly violated the TCPA pursuant to 47 U.S.C. § 227(b)(3)(c). Therefore, summary judgment is also denied on the issue of trebling damages.

### B. State Law Claims

Plaintiff brings his state law claims under various provisions of the Ohio Consumer Sales Practice Act (CSPA) and the Ohio Telephone Solicitation Sales Act (TSSA). To prevail on a

claim under the CSPA, a plaintiff must prove the defendant committed an "unfair or deceptive act or practice" or "unconscionable act or practice" and that the act or practice occurred "in connection with a consumer transaction." *Hamilton v. Spurling*, No. 3:11-cv-00102, 2013 WL 1164336, at *13 (S.D. Ohio Mar. 20, 2013) (quoting Ohio Rev. Code § 1345.02(A) and Ohio Rev. Code § 1345.03(A)). The TSSA generally outlines the state mandates for telephone solicitors and establishes that violations of certain TSSA provisions qualify as an "unfair or deceptive act or practice" under the CSPA, including of sections 4719.02, 4719.05, or 4719.06; division (C), (D), or (E) of section 4719.07; section 4719.08; and division (A) of section 4719.09. Ohio Rev. Code § 4719.14.

The parties disagree on whether the calls defendant placed to plaintiff constitute a "telephone solicitation" in accordance with the TSSA. (Doc. 43 at PAGEID 210-11, 21; Doc. 49 at PAGEID 326, 328-29, 332-33). The TSSA defines telephone solicitation as a "communication [] initiated by or on behalf of a telephone solicitor or by a salesperson," Ohio Rev. Code § 4719.01(7)(a), where the "communication either represents a price or the quality or availability of goods or services or is used to induce the person to purchase goods or services, including, but not limited to, inducement through the offering of a gift, award, or prize." Ohio Rev. Code § 4719.01(7)(b). A telephone solicitor is defined as someone who "engages in telephone solicitation directly or through one or more salespersons." Ohio Rev. Code § 4719.01(8).

Defendant argues that because the communication did not include an "offer" or "inducement," and plaintiff did not ultimately "purchase any goods or services from defendant," the communication is not a "telephone solicitation." (Doc. 43 at PAGEID 210). Plaintiff argues that defendant contacted plaintiff to "advertise defendant's services" (Doc. 49 at PAGEID 326),

19

and the "unsolicited communications . . . were telephone solicitations, comprised of messages containing information about [d]efendant's services to clients." (Doc. 49 at PAGEID 329).

Defendant has failed to present evidence demonstrating there is no genuine issue of fact as to whether it engaged in a "telephone solicitation" within the meaning of the TSSA. Ohio Rev. Code § 4719.01(7)(a). Defendant's focus on the content of the communication with plaintiff, rather than the intent of the communication, places undue emphasis on the statute's use of the term "inducement" and ignores the use of the verb "to induce." The definition of "telephone solicitation" under the TSSA focuses on the initiation of communication aimed at *inducing* a purchase, regardless of the outcome. If the communication was initiated with the intent to induce the person to purchase goods or services, then it meets the criteria for telephone solicitation. Further, defendant points to no case law supporting the assertion that there must be a completed transaction for goods or services to qualify as a telephone solicitation.

Defendant admits it obtained plaintiff's contact information from a third party who "generated leads for insurance companies and brokers who sell Medicare insurance supplements," like defendant, and "provided contact information for potential customers who expressly requested information concerning Medicare insurance supplements." (Doc. 43 at PAGEID 202, 207). The parties agree that the consent disclaimer on the partner website (www.securemedicareenrollment.com), which defendant partially relies on for its consent argument, contained the statement, "This is a solicitation for insurance." (Doc. 43-1 at PAGEID 241). Further, while the parties agree Ms. Greene told plaintiff she was "not making a sales call" (Doc. 43 at PAGEID 211; Doc. 49 at PAGEID 332), her inquiry as to whether "plaintiff's Medicare needs had been met" was presumably a precursor to a discussion about the "availability" of Medicare insurance supplements offered for sale by the defendant. Defendant

20

has not offered any other purpose for initiating the telephone call to plaintiff other than to induce him to purchase Medicare health insurance supplements.

Defendant also avers that "[w]hen one listens to the recording of the conversation between Ms. Greene and Plaintiff, one can only conclude that Ms. Greene believed . . . Plaintiff had expressly requested additional information concerning Medicare coverage." (Doc. 43 at PAGEID 210-11; 43-1 at PAGEID 216). Unfortunately, the Court does not have the benefit of listening to the telephone calls between Ms. Greene and plaintiff. While both parties reference "recordings" of the telephone calls between plaintiff and defendant's agent Ms. Greene, neither party has entered the evidence into the record. (Doc. 43 at PAGEID 204; Doc. 49-1 at PAGEID 346, Ex. 3, Request for Production 5 Answer).

Defendant has failed to demonstrate there is no genuine issue of material fact as to whether the communications it initiated with plaintiff were not "telephone solicitations." Therefore, defendant's motion for summary judgment on plaintiff's state law claims (Counts III – VII) is denied.

**IT IS THEREFORE ORDERED THAT:**

1. Defendant's motion for summary judgment (Doc. 43) is **GRANTED** as to the issue of whether defendant used an automatic telephone dialing system to initiate communications with plaintiff.

2. Defendant's motion for summary judgment (Doc. 43) is **DENIED** as to all other issues and claims.

Date: 9/27/2024

Karen L. Litkovitz
Chief United States Magistrate Judge